COMMONWEALTH *vs.* FENTON F., a juvenile.[1]

Suffolk. March 2, 2004. - June 9, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Plea, Sentence, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

Discussion of the sixty-day time limit in Mass. R. Crim. P. 29, 378 Mass. 899 (1979), for filing a motion to revise or revoke a sentence. [36-37]

This court concluded that in the circumstances of the case, there was no ineffective assistance of counsel in connection with the sentencing of a juvenile defendant who had pleaded delinquent pursuant to a plea agreement, and thus no basis on which the defendant could be excused from the sixty-day time limit in which to file a motion to revise or revoke the sentence pursuant to Mass. R. Crim. P. 29, 378 Mass. 899 (1979); therefore, this court vacated the allowance of the defendant's motion to revise or revoke his sentence and the order resentencing him, and reimposed the original sentence. [37-41]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 3, 2003.

The case was reported by *Cordy,* J.

*Michelle Learned,* Assistant District Attorney, for the Commonwealth.

*James L. Sultan (Michelle Menken* with him) for the defendant.

*Murray Kohn,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. Pursuant to a 1993 plea agreement, the defendant pleaded delinquent by reason of murder in the first degree, armed robbery, and possession of a firearm without a license. The defendant was sentenced to from fifteen to twenty years,

---

[1]Although the defendant is now an adult, he was retained as a juvenile and this pseudonym is part of the procedural history. *Commonwealth* v. *Fenton F.,* 57 Mass. App. Ct. 903 (2003).

pursuant to G. L. c. 119, § 72, as amended through St. 1992, c. 398, § 4, twenty years being the maximum under the statute.[2] After a hearing conducted in 2003, almost ten years after the plea agreement and sentencing, the judge granted the defendant's motion to revise or revoke his sentence. The judge entertained this belated motion to revise or revoke on the theory that ineffective assistance of counsel created an exception to the sixty-day limit set forth in Mass. R. Crim. P. 29, 378 Mass. 899 (1979). See *Commonwealth* v. *Stubbs*, 15 Mass. App. Ct. 955 (1983). He vacated the defendant's sentence and resentenced him to from fifteen years to fifteen years and one day. The Commonwealth filed a petition pursuant to G. L. c. 211, § 3, in the county court, and a single justice reported the case to the full court. Because we conclude that, in the circumstances of this case, there was no ineffective assistance of counsel, the sixty-day limit prescribed by rule 29 for filing a motion to revise or revoke, therefore, still applies. Accordingly, we vacate the allowance of the defendant's motion to revise or revoke his sentence, vacate the judge's order resentencing the defendant, and reimpose the defendant's original sentence.[3]

*Facts and Procedural History.*

We recite the relevant facts (which are not in dispute) and the lengthy procedural history pertaining to the motion to revise or revoke. In March, 1993, the defendant, then sixteen years of age, and George Davis, Jr., talked about robbing someone. The defendant was carrying a .32 caliber automatic pistol, and had been drinking alcohol and using marijuana. Finding no one on the street to rob, the pair hailed a taxicab and asked the driver

---

[2]General Laws c. 119, § 72, as amended through St. 1992, c. 398, § 4, provided, in relevant part: "If a child who has passed his fourteenth birthday is adjudicated a delinquent . . . for murder in the first degree such child shall be committed to a maximum confinement of twenty years. Such confinement shall be to the custody of the department of youth services . . . until a maximum age of twenty-one years and thereafter to the . . . department of correction . . . but in no case shall the confinement be for less than fifteen years."

The statute was rewritten in 1996 (St. 1996, c. 200, § 13) and convictions of murder in the first degree against individuals fourteen to seventeen years of age are now governed by G. L. c. 119, § 72B.

[3]We acknowledge receipt of the amicus brief of the Committee for Public Counsel Services.

to take them to a street that would afford them a quick escape. Once there, the pair proceeded to rob the driver. In the course of the robbery, the defendant went to the driver's side window, took out the gun, and shot the taxicab driver in the shoulder. The victim, a native of Haiti who had a wife and two children, died from the wound a short time later.

The defendant's counsel negotiated a plea agreement with the Commonwealth in 1993. In exchange for his plea of delinquency and agreement to the "maximum" sentence,[4] the Commonwealth stipulated to the defendant's amenability to treatment and agreed not to pursue its motion to have the case transferred to the Superior Court, pursuant to G. L. c. 119, § 61.[5] If the judge had granted the Commonwealth's motion to transfer the case, the defendant would have been tried as an adult and, if convicted, faced life in prison without the possibility of parole. The judge concurred with the Commonwealth regarding the defendant's amenability to treatment, accepted the plea, and retained the defendant as a juvenile.

A few weeks after sentencing and within the sixty-day limit, the defendant contacted his attorney and asked whether there was something that could be done to reduce his sentence. The attorney told the defendant that "as a practical matter" there was nothing further that could be done, as he had just agreed to the plea bargain.[6] The attorney did not inform the defendant about the availability of a motion to revise or revoke. The at-

---

[4]The Commonwealth states that the sentence was a "jointly recommended" disposition. At the plea hearing, the prosecutor stated that the agreement, the product of "protracted negotiations," was for the "maximum," which he identified as a sentence of "not more than [twenty], nor less than [fifteen] years." Defense counsel did not raise any objections to the prosecutor's explanation of the plea agreement or to the prosecutor's characterization of the deal as the "maximum."

In affidavits submitted in 2000 and 2001 in support of the defendant's later motions (to vacate and reimpose sentence and to revise or revoke sentence) and in testimony at an evidentiary hearing (discussed *infra*), defense counsel never used the word "maximum" to describe the sentence. He did, however, refer to the discussions (and agreement) with the prosecutor as involving a sentence of from fifteen years to twenty years.

[5]The hearing combined a plea and a transfer hearing.

[6]Defense counsel used the phrase "as a practical matter" in his affidavit filed in 2000. In addition, in his detailed testimony at the evidentiary hearing on the motion, defense counsel reiterated the words "as a practical matter."

torney also did not inform the defendant that he could find another attorney or that he could ask the court to appoint an attorney, to pursue such a motion.

In 1997, at twenty-one years of age, the defendant was transferred from the Department of Youth Services to an adult facility to serve out the remainder of his sentence. It was after the transfer that he learned of the availability of a motion to revise or revoke sentence. He did research in the prison library and, in January, 2000, filed a pro se motion for leave to file a late motion to revise or revoke his sentence, along with a supporting affidavit and a motion for court-appointed counsel. In the affidavit, the defendant stated that, in 1993, his attorney had told him that nothing could be done about his sentence and never informed him about the possibility of a motion to revise or revoke. The defendant also stated that he never intended to kill the victim.[7]

The judge appointed counsel for the defendant. On April 26, 2001, now represented by counsel, the defendant filed a motion to vacate and reimpose his sentence (based on ineffective as-

He also explained that he did not believe he had grounds for a motion to revise or revoke, and that it was inappropriate to go back to try to revise the sentence after negotiations with the prosecution. The defendant testified that defense counsel told him, "[T]here was no way. I made a deal and I was stuck with it."

[7] The defendant states in his brief that he was indicted by a grand jury on murder in the first degree under a theory of felony-murder, which also was the theory argued by the prosecutor at the defendant's plea hearing.

The defendant averred that he was never informed of the Commonwealth's burden in the Superior Court of proving specific intent to support a conviction of murder in the first degree. This statement overlooks the fact that murder in the first degree based on felony-murder, the theory under which the Commonwealth would have proceeded against the defendant, does not require proof of specific intent. See, e.g., *Commonwealth* v. *Tevlin,* 433 Mass. 305, 314 (2001), citing *Commonwealth* v. *Matchett,* 386 Mass. 492, 505-507 (1982) (intent to commit felony serves as malice necessary for murder).

The defendant also noted that the judge was concerned about the defendant's claim that he did not know the gun was loaded. The defendant's state of mind concerning the gun is irrelevant. See, e.g., *Commonwealth* v. *Powell,* 433 Mass. 399, 401-402 (2001) (wooden "gun" sufficient to support conviction of armed robbery); *Commonwealth* v. *Tevlin, supra* at 311, quoting *Commonwealth* v. *Tarrant,* 367 Mass. 411, 414 (1975) (relevant point is menacing conduct producing fear of harm which it was intended to produce); *Commonwealth* v. *Nickologines,* 322 Mass. 274, 277 (1948) (on charge of armed robbery, Commonwealth does not have to prove gun was loaded).

sistance of counsel), and asked for leave to withdraw his pro se motion and to file a motion to revise or revoke his sentence. In the new motion to revise or revoke, the defendant asked the judge to sentence him to from fifteen years to fifteen years and one day. Defense counsel filed two affidavits in support of the defendant's motions, one in 2000, and the other in 2001.

On August 16, 2001, the judge denied the defendant's motions on the ground that, under the language of the statute, he had no sentencing discretion and had to sentence the defendant to a maximum of twenty years. In September, 2001, the defendant filed a motion for reconsideration, asking that the judge report the question of discretionary sentencing to the Appeals Court, which he did. On January 8, 2003, the Appeals Court dismissed the report, holding that, at the time of the indictments, a Juvenile Court judge did not have the authority to report a question to the Appeals Court under Mass. R. Crim. P. 34, 378 Mass. 905 (1979), or otherwise. The Appeals Court did not consider the ineffective assistance of counsel issue, calling it "premature." *Commonwealth* v. *Fenton F.*, 57 Mass. App. Ct. 903, 904 (2003).

On January 15, 2003, the defendant filed a second motion for reconsideration and for an evidentiary hearing on his motion to revise or revoke. The judge allowed the motion and an evidentiary hearing was held in March, 2003. At the evidentiary hearing, defense counsel stated that he had an "imperfect recollection" but believed that at the time of the plea, he thought the statute required a sentence of from fifteen to twenty years.

On June 4, 2003, the judge granted the defendant's motion based on ineffective assistance of counsel, and resentenced the defendant to from fifteen years to fifteen years and one day. He noted that the Commonwealth conceded that, at the time of the plea, he could have sentenced the defendant to something less than twenty years. He found that neither attorney understood sentencing under the statute. He also stated that, had he known he had the discretion, he would have sentenced the defendant to less than the maximum, as that was his wish at the plea hearing.[8] The judge's determination of ineffective assistance of counsel

---

[8]There was no evidence concerning whether the prosecutor also thought the statute mandated a twenty-year maximum. In its appeal, the Commonwealth

had two bases: (1) defense counsel's failure to inform the defendant that he had the right to file a motion to revise or revoke, even after the defendant asked him whether something could be done about his sentence, and (2) defense counsel's failure to advise the court of the option of imposing less than the twenty-year maximum. The Commonwealth then petitioned the single justice pursuant to G. L. c. 211, § 3, which was reported to the full court.[9]

*Discussion.*

The parties present extensive argument on the multitude of substantive and procedural issues that emerge from this protracted case history. For purposes of resolving the present petition, we need only address one issue, as we conclude that no ineffective assistance of counsel has been shown on this record. In addressing the merits of that central claim, we express no opinion as to any of the Commonwealth's arguments to the effect that the petition could be granted on any one of many grounds.

1. *Mass. R. Crim. P. 29.* "It is well settled that rule 29 (a) 'establishes strict jurisdictional time limits for the filing of . . . motions [to revise or revoke a sentence].' " *Commonwealth* v. *DeJesus,* 440 Mass. 147, 150-151 (2003), quoting *Commonwealth* v. *Layne,* 386 Mass. 291, 295 (1982). See *Commonwealth* v. *DeJesus, supra* at 152 (defendant must file affidavit or "otherwise indicate the grounds on which [motion to revise or revoke] is based"). A motion to revise or revoke a sentence must be filed within sixty days after a sentence is imposed and a judge cannot consider a motion filed after this time frame. *Id.* at 151-152, and cases cited. See *Commonwealth* v. *Amirault,* 415 Mass. 112, 117 (1993), and cases cited (rule 29 review limited to facts as they existed at time of sentencing; "judiciary may not act as super-parole board").

---

contends that the judge's finding that the prosecutor misapprehended the statute is an error. The accuracy of the judge's finding that no one understood the statute is discussed *infra.*

[9]The case is properly before us pursuant to G. L. c. 211, § 3. See *Commonwealth* v. *DeJesus,* 440 Mass. 147, 150 (2003), citing *Commonwealth* v. *Cowan,* 422 Mass. 546, 547 (1996) (review proper because Commonwealth has no other appellate remedy where District Court allowed defendant's motion to revise or revoke).

However, in *Commonwealth* v. *Stubbs*, 15 Mass. App. Ct. 955 (1983), the defendant filed a motion to revise or revoke after the sixty-day time limit, claiming his attorney promised to file the motion, but failed to do so in a timely manner. The record did not show "whether such a motion was contemplated at the time of sentencing [or] whether a promise . . . was made at the time of sentencing or made subsequently within the prescribed time limit." *Id.* The Appeals Court, relying on *United States* v. *Ackerman*, 619 F.2d 285, 287-288 (3d Cir. 1980), remanded the case for findings concerning whether there was ineffective assistance of counsel. *Commonwealth* v. *Stubbs*, *supra.* In the *Ackerman* case, the court stated that if there was no justification for an attorney's failure to file a motion to correct or reduce the defendant's sentence and there was a finding of ineffective assistance of counsel, the proper procedure would be for the court to vacate the sentence and reimpose it, thereby affording the defendant an opportunity to file a motion to revise or revoke (under analogous Fed. R. Crim. P. 35). *United States* v. *Ackerman*, *supra.* Cf. *Commonwealth* v. *McNulty*, 42 Mass. App. Ct. 955, 956-957 (1997) (where claim of ineffective assistance of counsel on untimely rule 29 motion deemed waived, court need not address *Stubbs* exception).[10]

2. *Ineffective assistance of counsel.* In order to prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of proving that the behavior of counsel fell below that of an ordinary, fallible lawyer and that such failing "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Roe* v. *Flores-Ortega*, 528 U.S. 470, 476-477 (2000) (in context of failure timely to file notice of appeal, ineffective assistance of counsel test established by *Strickland* v. *Washington*, 466 U.S. 668 [1984], applies). Here, defense counsel's behavior was not substandard, and we need not address whether that behavior prejudiced the defendant in any manner. In addition, our inquiry into defense counsel's behavior

[10]The Commonwealth has asked that we overrule *Commonwealth* v. *Stubbs*, 15 Mass. App. Ct. 955 (1983), or limit it to its precise facts. As we find no ineffective assistance of counsel here, we need not address the precise boundaries of the *Stubbs* exception or the merits of its holding.

must focus on the point in time when he gave the defendant advice about whether anything could be done to reduce his sentence, not on facts that only emerged at some later point. See *Strickland* v. *Washington, supra* at 689 (in assessing attorney performance at trial, "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time"). See generally *Commonwealth* v. *Comita,* 441 Mass. 86, 89-90, 93 n.11, 94 (2004) (where ineffective assistance of counsel claimed after five years, "it is difficult to reconstruct" specific information on which trial counsel made assessments concerning motion to suppress).

As discussed, the defense counsel negotiated a plea agreement with the Commonwealth[11] that saved the defendant from the possibility of the far worse fate of life in prison without the possibility of parole. The defendant pleaded delinquent by reason of murder in the first degree and the other charges and agreed to the "maximum" sentence under G. L. c. 119, § 72, in exchange for the Commonwealth's stipulating to his amenability to treatment and agreeing not to pursue a hearing to transfer the defendant to Superior Court for trial as an adult. The defendant's sentence as negotiated included the statutory minimum of fifteen years, as well as the statutory maximum of twenty years. See note 4, *supra.*

The judge found that counsel was ineffective for failing to appreciate, and for failing to inform the judge, that the upper end of the defendant's sentence did not have to be the statutory maximum of twenty years. He thus posits that there was a viable ground for a motion to revise or revoke that counsel should not have overlooked. The judge's conclusion that defense counsel did not understand that the judge had discretion in the matter is based on defense counsel's testimony at the evidentiary hearing (almost ten years after the plea hearing). We first note that the statute then in effect is clear on its face as to what

---

[11]In his brief, the defendant states that "[t]he specific term of imprisonment was not negotiated." This statement is contrary to the record. In his testimony at the evidentiary hearing and in one of his affidavits, defense counsel states that the *sentence* (from fifteen to twenty years) was negotiated. In addition, the Commonwealth characterized it as a jointly recommended disposition, see note 4, *supra.*

the maximum was: "[A] child who has passed his fourteenth birthday . . . shall be committed to a maximum confinement of twenty years." G. L. c. 119, § 72.[12] It is also clear that fifteen years is a statutory minimum — "but in no case shall the confinement be for less than fifteen years . . . ." *Id.* Moreover, there is evidence in the record that the defense attorney *did* understand the sentencing options under the statute. In his 2000 affidavit, he states "[under the plea agreement] the defendant agreed to plead guilty to first degree murder in the Juvenile Court carrying a 15-year mandatory minimum sentence." His 2001 affidavit states, *"Had the 15-20 years agreement not been in place,* I would have argued for a lesser sentence" (emphasis added).[13]

When the defendant contacted his attorney after the plea and sentencing and asked whether there was anything he could do about his sentence, it was not ineffective assistance of counsel for the attorney to correctly state that, "as a practical matter" there was nothing he could do. The observation that the defendant would be "stuck" with the bargain he had made was, "as a practical matter," an accurate assessment of the situation. The defense attorney testified that he did not know at the time of any ground on which he could bring a motion to revise or revoke. One cannot file a motion to revise or revoke without stating the grounds on which it is based. *Commonwealth* v. *DeJesus,* 440 Mass. 147, 152 (2003).

---

[12]At the plea hearing, after telling the judge that the plea bargain was for the maximum, the prosecutor stated that, under the statute, that would be no less than fifteen and no more than twenty years. See note 4, *supra.* The judge's sentence of from fifteen to twenty years theoretically allows the defendant to serve less than the twenty-year maximum, assuming he is successful in a bid for parole.

[13]Even if both the prosecutor and defense counsel somehow misapprehended whether a sentence of from fifteen to twenty years was required under the statute, it is irrelevant to the issue in this case. Fifteen to twenty years is what the prosecutor offered, and defense counsel testified at the evidentiary hearing that it was a "very fair sentence." He believed that the case was not particularly defensible on the merits and that the defendant would likely have been convicted of murder in the first degree had he gone to trial. Most importantly, defense counsel was "very, very happy" to have the case remain in Juvenile Court, given the potential alternative. There is no claim of any ineffectiveness in counsel's recommendation that the defendant accept the plea bargain offered by the Commonwealth.

The theory of ineffectiveness now hinges on the assumption that there was a potentially meritorious ground for such a motion, namely, the judge's mistaken belief that his sentencing discretion was constrained. The fact that the judge stated, some ten years after sentencing, that *he* misapprehended the statute does not render the attorney's actions ineffective assistance of counsel. Assuming that the judge's memory is correct and that he did misapprehend the statute, defense counsel had no way of knowing of such misapprehension at the time the defendant inquired whether anything could be done about his sentence. Therefore, defense counsel's assessment that he had no grounds for the revise or revoke motion was, at the time, correct. By his own admission, the defense attorney's current view about what he should have done came only with the "wonderful clarity of hindsight,"[14] which included knowledge that the judge believed he did not understand that he may have had discretion under the statute. Such knowledge did not exist at the time he advised the defendant. In any event, such knowledge would be irrelevant. The driving force behind the agreement was the fact that the plea bargain was extremely advantageous to the defendant, who avoided being tried in the Superior Court where he would have faced the possibility of life without parole.

Moreover, if defense counsel had argued to the judge that he had discretion under the statute to sentence to less than twenty years or otherwise suggested that the judge impose some sentence less than that to which the defendant agreed, he would have jeopardized the very plea agreement he negotiated on behalf of the defendant. The Commonwealth undoubtedly would have objected to any such argument by defense counsel and stated that the "maximum" with a sentence of from fifteen to twenty years was the deal. Defense counsel, in fact, made this point in his 2001 affidavit when he stated, "Had the 15-20 years agreement not been in place, I would have argued for a lesser sentence."

There is no evidence of ineffectiveness in counsel's recommending that the defendant accept the Commonwealth's plea;

---

[14]In fact, the question that preceded the defense counsel's response was, "In hindsight, in your opinion, based on your experience in criminal law, what do you believe you should have told him on that day?"

there is nothing in the record of the plea hearing to indicate that the judge was not satisfied with or had reservations about the plea[15]; defense counsel did not mislead the judge about the statute; and the sentence was not an illegal sentence. The defendant pleaded delinquent pursuant to an agreement with the prosecution that the Commonwealth would give up its right to a transfer hearing in exchange for the defendant's agreeing to a "maximum" sentence of from fifteen to twenty years. Counsel's assessment and recommendation that "as a practical matter," nothing could be done to reduce the defendant's sentence to something below that to which he had agreed, did not fall below the standard of an ordinary, fallible lawyer. To the contrary, based on everything that counsel knew or reasonably could have known at the time, the advice was entirely sound.[16]

*Conclusion.*

We therefore conclude that there was no ineffective assistance

---

[15]In addition, defense counsel testified that he did not recall the judge having any reservations about the plea.

Although the judge stated, in his 2003 decision, that he wanted to impose a lesser sentence, nothing in the record at the time would have alerted counsel to the judge's private thoughts on that subject. The defendant argues that the judge expressed his opinion that a fifteen-year sentence would be appropriate. The defendant supports this claim by stating that the judge was reluctant to accept a plea to murder in the first degree. However, the judge's ostensible reluctance stemmed from his concern over the fact that the defendant claimed that he did not know the gun was loaded. This issue, and the court's treatment of it, is discussed in note 7, *supra*. The defendant also claims that further evidence of the judge's dissatisfaction is found in the transfer hearing findings and order, where the judge stated that the public would be protected by the defendant's "incarceration for fifteen years." This version of the judge's statement is incorrect. The judge's actual statement was that "[t]he public will be adequately protected for *at least fifteen years*" (emphasis added). The defendant also points to the fact that in the transfer hearing findings and order, the judge lamented that progress the defendant might make in the juvenile system would be undone by the requirement that he be transferred to an adult facility. This statement does not bear on the length of the sentence, but on the policy of transfer at twenty-one years of age.

[16]At the evidentiary hearing the defendant and his mother both testified that, in essence, they did not really understand that the defendant was to serve twenty years. The defendant is not challenging the voluntariness of his plea. Therefore, this claim at the evidentiary hearing, almost ten years after his plea, is not relevant to his claim that he received ineffective assistance of counsel because defense counsel did not tell him about a motion to revise or revoke. See *Commonwealth* v. *Gaumound*, 53 Mass. App. Ct. 912 (2002) (rule

of counsel in connection with any potential motion to revise or revoke the defendant's sentence, and thus no basis on which the defendant could arguably be excused from the sixty-day time limit in which to file such a motion. Accordingly, we vacate the allowance of the defendant's motion to revise or revoke his sentence, vacate the judge's order sentencing the defendant to from fifteen years to fifteen years and one day, and reinstate the defendant's original sentence.

*So ordered.*

---

29 motion not vehicle for defendant to challenge validity of guilty plea).

In addition, although defense counsel did not recall specifically discussing the twenty-year maximum he was "quite certain" he told the defendant it was a fifteen-to-twenty year sentence, and "with a little bit of luck, [the defendant] would be home when he was [thirty-one years old]." In addition, defense counsel stated that he thought the defendant understood the fifteen-to-twenty year sentence, and "would find it incredible" that he (defense counsel) would not have discussed the entire plea agreement with the defendant's mother.